```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT
```

Steve Ekberg,                    :
        Plaintiff,               :
                                 :
        v.                       :    File No. 1:08-CV-219
                                 :
City of Burlington,              :
Burlington Police                :
Department,                      :
        Defendants.              :


                        <u>OPINION AND ORDER</u>
                     (Papers 19, 25, 27 and 29)

   Plaintiff Steve Ekberg, proceeding *pro se*, claims that the City of Burlington and the Burlington Police Department have wrongfully targeted him for citations and have failed to provide him with adequate protection. His claims initially focused on events taking place in 1999 and 2008. In a previous decision, the 1999 claims were dismissed as untimely.

   Now pending before the Court are Ekberg's objection to dismissal of the 1999 claims and two motions for summary judgment. Also pending is the defendants' motion to dismiss. For the reasons set forth below, the motion to dismiss (Paper 25) is GRANTED, Ekberg's motions (Papers 19, 27 and 29) are DENIED, all federal claims are DISMISSED and all state law claims are REMANDED to the state court.

                  <u>Factual and Procedural Background</u>

   Ekberg initiated this civil rights action in state court. His complaint consisted of two sentences, alleging "civil

right[s] violation[s] and failure to protect" on specified dates in 1999 and 2008, and requested damages for "mental anguish." The defendants removed the case to federal court and moved for a more definite statement of claims. The defendants also moved to dismiss the 1999 claims as untimely. The Court granted the motions to dismiss and for a more definite statement, requiring Ekberg to file an amended complaint that did not include events from 1999. Ekberg has submitted a written objection to dismissal of the 1999 claims, but has also filed a timely amended complaint excluding these claims.

In his amended complaint, Ekberg describes himself as a political activist and claims to be famous "for making the largest protest signs in the world." (Paper 22 at 6). He alleges that he has received "global recognition" for his "anti-state signs [which] are regularly displayed in Burlington and are popular with the local media." Id. Relevant to his current claims, Ekberg believes that the defendants have targeted him for harassment, "bodily harm and/or death . . . in part because of [his] local and national reputation as an activist." Id. at 1.

The first such harassment allegedly took place in early 2008.[1] According to the amended complaint, a Burlington police

---

[1] The precise date of the incident is not clear from the record. In one filing Ekberg identifies the date as February 9, 2008 (Paper 20 at 3), while in the Amended Complaint he cites February 23, 2008 (Paper 22 at 3). The state court docket (Paper 20-2 at 5) states the alleged offense date as January 7, 2008,

2

officer charged Ekberg with disorderly conduct. The complaint does not allege anything about the events leading up to the citation, but states in conclusory fashion that the citation was "dishonest," and was intended "to harass because of the language on my protest signs and intimidate me to stop making them." (Paper 22 at 9). Documents submitted by Ekberg indicate the state court found probable cause supporting the charge, and that the prosecution ultimately agreed to dismiss the case if Ekberg did not "pick up new charges or have any additional problems in the next 30 days." (Paper 20-2 at 21-22).[2]

The second incident occurred on March 22, 2008, after Ekberg was allegedly "physically assaulted at an anti-war rally by a man who violated my civil rights to free speech. He also broke my protest sign and had aggressive friends threaten me." (Paper 22 at 9). The complaint claims that a Burlington police officer was standing twenty feet away and "witnessed the whole attack" but failed to intervene until Ekberg asked him to do so. Id. The officer then proceeded to question the perpetrator. Ekberg claims that the officer's failure to act initially was part of an

---

with the citation being issued the same day and an information being filed on February 28, 2008.

[2] When considering a motion to dismiss, a court may examine documents attached to the complaint as exhibits, as well as matters of which judicial notice may be taken. Brass v. American Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

effort "to harass and intimidate me to stop making my signs by allowing me to be attacked . . . ." Id.

Within an hour of this first incident, another person allegedly sprayed Ekberg's sign with a can of paint and threatened him with a dog. Ekberg claims that the same officer again failed to protect him. When police took the sign to the police station to photograph it as evidence, they brushed it with a "black chalky substance" in an effort to obtain fingerprints. Id. at 10. Ekberg claims that the powder was used maliciously because the police "did not like" the sign, and that their failure to prevent further harm to the sign constituted additional harassment and intimidation.

The next incident occurred on May 14, 2008, when Ekberg complained to police about noise from another apartment in his building. A Burlington police officer responded to the complaint. Ekberg claims that, while eavesdropping on the officer's investigation, he heard the perpetrator admit to making noise and overheard another tenant verify his claim. Nonetheless, the officer informed Ekberg that he had found no corroborating evidence, stated that he had responded to that address on 18 separate occasions, and cited Ekberg for making false statements to police. Ekberg now claims that the citation was "fraudulent" and was issued "to harass and intimidate me

because of my reputation as an activist and to continue the conspiracy of the Burlington Police against me." Id. at 11.

The fourth incident occurred on June 28, 2008, while Ekberg was at home painting a sign. An individual named Matthew Porcaro allegedly appeared outside Ekberg's window "and in an aggressive posture was glaring at me like he wanted to kill me." Id. at 12. When Ekberg asked him to move away, Porcaro "made a fist and in a fit of angry aggression ran towards me and threw a punch through the air that stopped an inch short of hitting the screen." Id.

Ekberg called the Burlington Police and picked up a video camera so that he could "film any more aggression by Porcaro." Id. A police car came to Ekberg's street, and Ekberg allegedly "made eye contact with the driver and gestured for him to stop but he looked at me as if he recognized me and wish [sic] I were dead . . . ." Id. The car proceeded down the street, eventually stopping at a different location. Ekberg claims that he waived to the officer, "but he just stood there looking at me with disdain, like he wanted to shoot me." Id. The police car ultimately drove away.

When Ekberg called the police a second time, the dispatcher explained that she had misunderstood the address and would send another car. Ekberg went outside to meet the police, and was again approached by Porcaro. When he informed Porcaro that he was filming, Porcaro allegedly punched him in the head. Ekberg

5

claims that he "was able to fend Porcaro off but he assaults me a second time by punching me in the head." Id. at 13. A bystander intervened and escorted Porcaro away, only to return himself and become "irate" at Ekberg. Porcaro also returned and allegedly assaulted Ekberg two more times, eventually breaking the camera. Id.

The complaint asserts that the police could have stopped Porcaro's attacks, but "deliberately and maliciously left the scene and allowed him to attack me." While lying in the street enduring Porcaro's kicks and punches, Ekberg claims that he could "feel myself about to lose consciousness and an overwhelming feeling of peace came over me . . . . I felt great relief to no longer be tortured by the Burlington Police and this nightmare could finally come to an end." Id. at 14.

Ekberg did not lose consciousness, and was instead able to pursue Porcaro on a bicycle. He was eventually met by police, who allegedly accused him of inciting the attack by videotaping his assailant. Records submitted by Ekberg indicate that Porcaro was later charged with assault. (Paper 20-2 at 19-24). Those records also show that after Ekberg's second call to the police, an officer had been dispatched to the correct address but arrived after the incident with Porcaro had occurred. Id. at 36.

Ekberg subsequently took a taxi to the hospital, where he reportedly told a doctor that "[t]he Burlington Police are trying

to kill me." Id. at 15.  The complaint concludes that the Burlington Police, by "deliberately and maliciously driving away when they saw me signaling for their help and their subsequent refusal to return resulting in me being attacked and believing I would die proves a substantial overt act in furtherance of their conspiracy against me." Id.

For his legal claims, Ekberg accuses the City and the Burlington Police of violating his right to free speech; discrimination; making false claims; neglect of duty; inciting to felony; and conspiracy, all in violation of Vermont law.  He also alleges a general "deprivation of rights" under 42 U.S.C. § 1983.

## Discussion

I. Objection to Dismissal of 1999 Claims

In a previous order (Paper 18), the Court dismissed Ekberg's allegations with respect to events that took place in 1999 as untimely.  Ekberg has since filed an "objection" to that dismissal, which the Court construes as a motion for reconsideration.  "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Schrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). If "the moving party [is] seek[ing] solely to relitigate an issue

7

already decided," the court should deny the motion for reconsideration and adhere to its prior decision.  Id.

Ekberg's motion does not bring any new issues or arguments before the Court.  He first argues that events allegedly occurring in 1999 were connected with his current claims, thus evidencing an ongoing violation.  The Court considered and rejected this argument previously.  (Paper 18 at 7-8) (citing Singleton v. City of New York, 632 F.2d 185 (2d Cir. 1980), cert. denied, 450 U.S. 920 (1981)).  Ekberg also claims that he could not have filed his claims in 1999 because he was "mentally incompetent . . . .  I did not know that I 'must take legal steps.'  I was not aware nor could I appreciate the situation that I was required to do so."  (Paper 19 at 2).  The Court considered this argument as well, noting that Ekberg had offered nothing more than a conclusory allegation of incapacity.  (Paper 18 at 5-7).  His current motion offers no additional facts on this point, and thus requires no further consideration.  The objection to dismissal (Paper 19) is OVERRULED, and to the extent that it constitutes a motion, is DENIED.

II. Defendants' Motion to Dismiss

   A. Legal Standard

The defendants have moved to dismiss Ekberg's amended complaint for failure to state a claim.  Such a motion, filed pursuant to Fed. R. Civ. P. 12(b)(6), tests the legal rather than

the factual sufficiency of a complaint.  See, e.g., Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'" (quoting Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998)).  Accordingly, the Court must accept the factual allegations in the complaint as true, Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007), and draw all reasonable inferences in favor of the plaintiff.  Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995).

The Supreme Court has held that the standard governing a complaint's legal sufficiency is one of "plausibility."  Bell Atlantic Corp. Twombly, 550 U.S. 544, 556-60 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).  The standard does not require a probability of liability, but "asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  Additionally, the Court is not required to accept a plaintiff's legal conclusions as true.  Id. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Pleadings drafted by a *pro se* party should be liberally

9

construed. Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006).

B. City of Burlington

The defendants in this case are the City of Burlington and the Burlington Police Department. Although individual police officers are referenced in the amended complaint, Ekberg's legal claims are premised upon liability on the part of those officers' employers. Specifically, Ekberg claims that the City and the Police Department "are targeting me, in a clear case of police misconduct . . . . I claim that the Burlington Police have violated my right to free speech. I claim that the Burlington Police have knowingly and willingly failed to protect me in a very serious manner thereby putting my life at risk." (Paper 22 at 2). Ekberg's allegations center on his claim that he has been targeted by the police, and that his factual statements are proof of a conspiracy. Id. at 4, 6, 9-12, 17.

The motion to dismiss first addresses Ekberg's claims against the City. The Supreme Court has held that "the language of § 1983, read against the background of the . . . legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell v. Dep't of Soc. Servcs., 436 U.S. 658, 691 (1978). Accordingly, to "prevail on a claim against a

municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008).

The "official policy" requirement arises out of the principle that a municipality cannot be held liable under *respondeat superior*. See Ambrose v. City of New York, 2009 WL 890106, at *6 (S.D.N.Y. Mar. 31, 2009) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986)). Instead, "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." Roe, 542 F.3d at 37 (quoting Bd. of County Comm'rs v. Brown, 520 U.S. 397, 404 (1997)).

The defendants argue that Ekberg's claims are "plainly deficient," and characterize the complaint as "unsupported, whimsical, and incapable of proving the City's intent to deliberately prosecute an innocent man." (Paper 25 at 17, 20). At the motion to dismiss stage, a plaintiff "is not obligated to plead evidence supporting his allegations of the existence of a custom or policy that allegedly caused the injury in question." Tsotesi v. Bd. of Educ., 258 F. Supp. 2d 336, 338 (S.D.N.Y.

11

2003). Nonetheless, a plaintiff is also not allowed to rely "only on a conclusory allegation of an unconstitutional policy." Operaji v. City of New York, 1997 WL 139160, at *3 (E.D.N.Y. Mar. 21, 1997) (citing Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) ("The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."), overruled on other grounds, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993)); Cerbelli v. City of New York, 600 F. Supp. 2d 405, 411-12 (E.D.N.Y. 2009).

Ekberg's allegations do not establish a plausible claim against the City of Burlington. He complains about five separate incidents, several of which involved conflicts with private third parties. Ekberg accuses the police of delayed responses, issuing false citations, and intentionally allowing him to be injured. In the end, he claims that the police are trying to kill him.

Even if the Court accepts Ekberg's facts and makes the required inferences in his favor, the complaint gives no indication of an "official policy statement, ordinance, regulation, decision, or custom, much less does it attribute any of the underlying allegedly tortious conduct to any such policy or custom." Cabble v. City of New York, 2009 WL 890098, at *6 (S.D.N.Y. Mar. 30, 2009). "Nor is there any allegation

suggesting that any individual in any policy-making capacity made the decision complained of or was deliberately indifferent to the actions of lower-ranking officers." Id. (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)).

Moreover, there is little support for a conspiracy claim. In order to properly plead a conspiracy, Ekberg must allege facts that tend to show "agreement and concerted action." Middleton v. City of New York, 2006 WL 1720400, at *7 (E.D.N.Y. June 19, 2006) (citations omitted). Ekberg offers no such facts, instead asking the Court to piece together a series of events and assume that the police were acting collectively and intentionally to cause him harm.

Of the five incidents described in the complaint, the defendants are not alleged to have *initiated* any of them. Accordingly, Ekberg's claims are premised upon the belief that, when he is in need of police services, he is systematically denied those services in violation of his rights. The facts set forth in the complaint simply do not support this conclusory claim. The Court notes that, accepting the plaintiff's version of the facts as true, responses by the police included taking witness statements, dusting for fingerprints, and bringing criminal charges against at least one such party. These sorts of police actions do not suggest a conspiracy to deny Ekbert his rights. Furthermore, the alleged connection between the police

department's actions and Ekberg's position as an activist is entirely unsupported.

It is therefore plain that Ekberg's allegations against the City are insufficient. As the Supreme Court recently stated, "we do not reject these bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [the plaintiff's] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." Iqbal, 129 S. Ct. at 1951. The claims against the City of Burlington are, therefore, DISMISSED.

C. Burlington Police Department

Although Ekberg has named both the City and the Burlington Police Department as defendants, "[a] municipal police department is not legal entity which can be sued under 42 U.S.C. § 1983." Gorton v. Burlington Police Dep't, 23 F. Supp. 2d 454, 456 (D. Vt. 1998); see also Hee v. Everlof, 812 F. Supp. 1350, 1351 (D. Vt. 1993). Therefore, the motion to dismiss the police department is GRANTED.

D. State Law Claims

In addition to a general § 1983 claim for "deprivation of rights," Ekberg brings several state law claims. The defendants urge the Court to dismiss those claims because they are brought pursuant to criminal statutes. Ekberg also alleges violations under the Vermont Constitution's Bill of Rights.

14

Because the defendants cannot be held liable under 42 U.S.C. § 1983, only these state law claims remain. Pursuant to 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction." The Second Circuit has stated that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." <u>Valencia ex rel. Franco v. Lee</u>, 316 F.3d 299, 305 (2d Cir. 2003). Accordingly, the Court will not exercise supplemental jurisdiction over Ekberg's state law claims, and those claims are REMANDED to the state court.

III. <u>Ekberg's Motions for Summary Judgment</u>

Remaining before the Court are Ekberg's motions for summary judgment. (Papers 26 and 29). Rather than filings under Fed. R. Civ. P. 56, however, these motions appear to be direct responses to submissions by the defendants related to their motion to dismiss. In fact, both motions make multiple references to specific statements in the defendants' filings, and proceed to argue against dismissal. Because the Court is granting the defendants' motion to dismiss, these responsive motions are DENIED.

<u>Conclusion</u>

For the reasons set forth above, the defendants' motion to dismiss (Paper 25) is GRANTED.  Ekberg's objection to dismissal of his 1999 claims (Paper 19) is OVERRULED, and his motions for summary judgment (Papers 27 and 29) are DENIED.  All state law claims are REMANDED to the state court, and all federal law claims are DISMISSED with prejudice.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 23rd day of June, 2009.

/s/ J. Garvan Murtha<br>
Honorable J. Garvan Murtha<br>
United States District Judge